IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.           CRIMINAL ACTION NO. 2:18-cr-00173

MARK MATTHEW SMITH

MEMORANDUM OPINION AND ORDER

Pending before the court is the defendant's Motion to Suppress [ECF No. 26]. The court held a hearing on this Motion on August 15, 2019 and ordered additional briefing. The defendant and the government have submitted additional briefs, and the matter is now ripe for review. For the following reasons, the Motion is **DENIED**.

I.  Background

The defendant seeks to suppress several items of evidence that he claims were unlawfully seized. At the suppression hearing, the court heard testimony of Lieutenant Matthew Board. The parties agree that on December 6, 2017, Lt. Board observed a 2005 white Dodge Caravan at the traffic light at the intersection of East Street and Seventh Street at approximately 3:00 am. Lt. Board followed the car for several blocks. He observed the car travelling 5–8 mph under the posted speed limit and make an abrupt turn without utilizing its turn signal. Tr. Mot. Suppress 10:7–25; Police Report Ex. A [ECF No. 27-1]. Lt. Board subsequently initiated a traffic stop.

The car had three occupants: Erica Blake[1] (the driver), Defendant Mark Smith (occupying the front passenger seat), and Aaron Dobson (sitting in the rear passenger seat).

Lt. Board testified that the location of the traffic stop was in an "extremely high crime area." Tr. Mot. Suppress 11:22. He testified that before approaching the car he called for backup but that they had not arrived at the time he initiated contact with the car. *Id.* at 12:17–22. Lt. Board testified that as he approached the car, Smith appeared nervous, was breathing rapidly, failed to maintain eye contact, and displayed "overall jitteriness." *Id.* at 12:13–17. Lt. Board immediately asked the car's occupants "if there were any weapons in the vehicle." *Id.* at 12:19. Lt. Board testified that Smith responded stating that there was a firearm in the car. *Id.* at 13:10. None of the occupants provided a definitive answer as to where the gun was located within the car. Police Report Ex. A [ECF No. 27-1]. Backup officers arrived shortly thereafter. The occupants were ordered out of the car. Tr. Mot. Suppress 17:3–6. At that point, Lt. Board detected the smell of marijuana emanating from the interior of the car. *Id.*

Lt. Board testified that Sergeant Koher then searched the car for contraband and the weapons. *Id.* at 17:12-16. The search produced a .45 caliber handgun in the passenger side floorboard. Lt. Board conducted a pat-down frisk for weapons of Smith's person, finding a "concealment holster… that had Velcroed around his body,

---

[1] Erica Blake originally identified herself as Ashley Blake to law enforcement. It was later discovered that her legal name is Erica Blake. *See* Tr. Mot. Suppress 36:9–12.

around the upper torso." *Id.* at 17:10–12. A criminal background check demonstrated that Mr. Smith had a felony conviction. The officers thus placed him under arrest for the illegal possession of the firearm. Smith was subsequently searched incident to arrest. That search located 4.5 grams of crack cocaine, 5.3 grams of methamphetamine, and 9 tablets of buprenorphine in Smith's right front pants pocket. Police Report Ex. A [ECF No. 27–1]. Smith's wallet was searched at the police station and was found to contain five counterfeit $100 bills. *Id.* The police report does not specify exactly where, but six Social Security cards belonging to various people were also found in Smith's possession.

Defendant Smith moved to suppress the contraband. He argues that the question, "are there any weapons in the vehicle?" was beyond the scope of the purpose of the stop and that by asking it, the question unlawfully prolonged the stop. Consequently, he argues that in order to ask the "unrelated" question, Lt. Board needed reasonable suspicion, which he did not have in this case. Defendant Smith does not challenge the lawfulness of the traffic stop for the purposes of this motion. The court is presented with three questions: (1) whether the single question was related to the mission of the stop, (2) if not, whether the single question unlawfully prolonged the stop, and (3) if so, whether Lt. Board had reasonable suspicion that the occupants in the car were involved in criminal activity or possessed dangerous weapons.

## II. Legal Standard

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). During the hearing, "the credibility of the witness[es] and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely,* 6 F.3d 1447, 1452–53 (10th Cir. 1993) (quoting *United States v. Walker,* 933 F.2d 812, 815 (10th Cir. 1991)). *See also Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.,* 56 F.3d 556, 567 (4th Cir. 1995) ("[i]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 623 (1993)). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

III. Discussion

"[I]n determining whether a traffic stop is reasonable, [courts] apply the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the court asks (1) if the stop was 'legitimate at its inception,' *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), and (2) if 'the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop,' *Williams*, 808 F.3d at 245." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

Taking these principles into account, in this case, the officer asked a single question, whether there were any firearms in the car. *Id.* at 12:19. The first question before the court is whether this question was related to the mission of the stop. The second question before the court is if the question was not related to the mission of the stop, whether the single question unlawfully prolonged the stop. The third question before the court is if the question unlawfully prolonged the stop, did the officer have reasonable suspicion.

a. Whether the Question was Related to the Mission of the Traffic Stop

The United States Supreme Court has made clear that because "traffic stops are 'especially fraught with danger to police officers,'" an officer "may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015) (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)). "Unlike a general interest in criminal enforcement, however, the government's officer safety interest stems from the mission of the stop

itself." *Id.* at 1616. For instance, an officer may order the driver out of the car for safety purposes because officer safety weighs greater than the "'de minimis' additional intrusion of requiring a driver, lawfully stopped, to exit a vehicle." *Id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977)); *see also Maryland v. Wilson*, 519 U.S. 408, 413–15 (expanding *Mimms* to include all passengers).

In addition, "an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez*, 135 S. Ct. at 1615 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

In this case, Lt. Board asked the single question, whether there were any weapons in the car. *Id.* at 12:19. Because the question is directly related to officer safety, the question is therefore related to the mission of the stop itself. *See Rodriguez*, 135 S. Ct. at 1615. Courts have already recognized the authority of "officers conducting a traffic stop [to] inquire about dangerous weapons." *United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010) ("[i]t would be irrational to conclude that officers cannot take the 'less intrusive [measure]' of 'simply [asking] whether a driver has a gun.'"); *see also Johnson*, 555 U.S. at 327 (finding that a stop, which included the officer asking if there were any weapons in the vehicle, was a

legitimate stop); *United States v. May*, 203 F.3d 53 (D.C. Cir. 1999) ("[c]ertainly . . . The Fourth Amendment . . . permits an officer to ask simply whether a driver has a gun."). This single question is certainly less intrusive than ordering the driver and passengers out of the car. *See Mimms*, 434 U.S. at 110–11; *see also Wilson*, 519 U.S. at 413–15. As another court has reasoned, "[i]f a police officer may, in the interest of officer safety, order all occupants out of the vehicle for the duration of the stop without violating the Fourth Amendment, the officer may take a less burdensome precaution to ensure officer safety." *State v. Wright*, 926 N.W.2d 157, 163 (Wis. 2019).

### b. Whether the Question Unlawfully Prolonged the Stop

The "Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id.* at 1614 (citing *Johnson*, 555 U.S. at 327–28; *Caballes*, 543 U.S. at 406, 408) (brackets added). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

Even assuming here that the single question, whether there were any weapons in the car, was not related to the mission of the traffic stop, the question did not violate the Fourth Amendment because it did not lengthen the traffic stop. The defendant relies on *Rodriguez* to argue the question unconstitutionally extended the stop. However, the temporal significance *Rodriguez* places on police actions for dog sniffs is impractical as it pertains to officer questioning. *Rodriguez* answered the

7

question whether a dog sniff is allowed if it extends a traffic stop, even if for a few minutes. *Id.* at 1612–17. *Rodriguez* specifically distinguished police questioning from dog sniffs. *Id.* at 1615 ("[a] dog sniff, by contrast, is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.'"); *Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000). Justice Alito noted in his dissent in *Rodriguez* that "it remains true that police may ask questions aimed at uncovering other criminal conduct and may order occupants out of their car during a valid stop." *Id.* at 1625 n. 2 (Alito, J., dissenting). Unlike prolonging a traffic stop for a dog sniff, a single question is such a de minimis extension of time that it likely cannot be measured. Therefore, the single question could not have measurably prolonged the stop.

The Fourth Circuit has found that asking unrelated questions while waiting for a background check did not prolong the stop. *See United States v. Green*, 740 F.3d 275, 281 (4th Cir. 2014) (finding that officers "brief questioning about matters unrelated to the traffic violations did not run afoul of the scope component of *Terry's* second prong" when asked during a criminal history check). The Fourth Circuit said again in *Bowman* that "police *during the course of a traffic stop* may question a vehicle's occupants on topics unrelated to the traffic infraction." *United States v. Bowman*, 884 F.3d 200, 210 (4th Cir. 2018) (citing *Johnson*, 555 U.S. at 333 (2009)). In addition, commentators have noted that brief questioning may not prolong a stop when an officer interrogates a single motorist while checking the motorist's documents or awaiting a criminal history or outstanding warrant check. *See* Tracey

8

Maclin, *Anthony Amsterdam's Perspectives on the Fourth Amendment, and What It Teaches About the Good and Bad in Rodriguez v. United States*, 100 MINN. L. REV. 1939, 1983 (2016). Here too, Lt. Board's single, noninvasive, general question related to officer and highway safety asked while the driver had yet to produce registration and insurance did not prolong the stop any longer than reasonably necessary to complete the stop's mission.

I cannot find that Lt. Board's single question violated the defendant's Fourth Amendment rights and should invoke the extraordinary remedy of the exclusionary rule. *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (Exclusion "has always been our last resort, not our first impulse."). I **FIND** that Lt. Board's single question was a constitutionally permissive question that not only was within the scope of a traffic stop's mission, but also did not unlawfully extend the defendant's seizure. Accordingly, because Lt. Broad's question was both within the scope of the mission and within the time reasonably necessary to complete the stop, a finding of reasonable suspicion prior to the question is unnecessary. Once the occupants answered affirmatively to Lt. Board's question, officers had reasonable suspicion to frisk Defendant Smith and search the car for weapons. Thus, the court need not reach the third question in this case.

IV. **Conclusion**

For the foregoing reasons, the defendant's Motion to Suppress [ECF No. 26] is **DENIED.** The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion

and Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: September 25, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE